OPINION OF THE COURT
 

 SLOVITER, Circuit Judge.
 

 The property at issue in this appeal was the marital home owned as tenants by the entirety by appellee Cynthia Ward, now the debtor in a proceeding under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 1301
 
 et seq.
 
 (1982 & Supp. IV 1986), and Charles Ward, appellee’s spouse, who was the debtor in a previously filed bankruptcy proceeding. Bowest Corporation, the mortgagee, purchased the property in a foreclosure sale conducted without knowledge of the automatic stay in effect pursuant to the bankruptcy of Charles Ward. The bankruptcy court, affirmed by the district court, 74 B.R. 465, set aside the sale. Bowest contends here that the stay in Charles Ward’s bankruptcy did not prevent sale of the home to satisfy a claim against Cynthia Ward’s interest, that Bow-est’s purchase is protected by the good-faith exception of 11 U.S.C. § 549(c) (Supp. IV 1986), and that the bankruptcy court erred in refusing to vacate from the stay in Cynthia Ward’s bankruptcy under 11 U.S. C. § 362(d) (1982 & Supp. IV 1986). We disagree, and affirm.
 

 I.
 

 Procedural History
 

 To understand the present dispute it is necessary to review the events in a prior
 
 *125
 
 bankruptcy. The real property in question here, located at 1250 Thurman Street, Camden, New Jersey, was the subject of an October 1985 foreclosure judgment obtained by Bowest, the mortgagee. Apparently fearing,
 
 inter alia,
 
 execution on that judgment, Charles Ward filed a petition in bankruptcy under Chapter 7 on January 9, 1986, triggering the automatic stay provision of 11 U.S.C. § 362(a). On January 24, 1986, the sheriff of Camden County conducted a sale of the property to satisfy Bowest’s October judgment. Bowest purchased and assigned said real estate.
 
 [1]
 
 On February 7, 1986, the sheriff executed and delivered a deed for the property to Bow-est. For reasons unknown, Bowest never recorded this deed.
 
 [2]
 

 Cynthia Ward filed her own petition for bankruptcy under Chapter 13 on March 3, 1986, and filed a plan that proposed to cure the arrears on the mortgage held by Bow-est and to resume current payments. Thereafter, Bowest filed its motion for an order vacating the stay and confirming the sheriff sale, and Cynthia Ward filed a cross-motion to set aside the pre-petition sale and transfer of the premises. The bankruptcy court delivered an oral opinion denying Bowest’s motion and granted the debtor’s cross-motion, and the district court affirmed.
 

 II.
 

 Validity of the Sheriffs Sale
 

 Bowest’s first contention is that the automatic stay following commencement of Charles Ward’s bankruptcy did not protect Cynthia Ward’s interest in the property. Bowest argues that it acquired Cynthia Ward’s possessory life estate and defea-sible right of survivorship in the property at the foreclosure sale. Bowest argument is based on its contention that, under New Jersey law, “creditors of either spouse may levy and execute upon a spouse’s right of survivorship where property is held as tenants by the entirety.” Appellant’s Brief at 12.
 

 Bowest misconceives the issue on appeal. The issue is not whether Cynthia Ward had an interest Bowest could reach by some method.
 
 See Newman v. Chase,
 
 70 N.J. 254, 359 A.2d 474 (1976). It is simply, as the bankruptcy and district courts recognized, whether Bowest could acquire any interest in the property as a consequence of the foreclosure sale conducted after Charles Ward’s petition was filed. The answer is clear: it could not.
 
 [3]
 

 This court has previously explained that the statutory definition of a debtor’s estate, which comprises “all legal or equitable interests of the debtor in property” at the time the case is filed, 11 U.S.C. § 541(a), “is certainly broad enough to include an individual debtor’s interest in property held as a tenant by the entirety.”
 
 Napotnik v. Equibank & Parkvale Savings Ass’n,
 
 679 F.2d 316, 318 (3d Cir.1982);
 
 cf
 
 11 U.S.C. § 522(b)(2) (1982) (allowing exemption from estate property of debtor’s interest in entirety property
 
 notwithstanding
 
 section 541). To sustain Bowest’s posi
 
 *126
 
 tion, it would be necessary to hold that the automatic stay applied only to Charles Ward’s interest in the property, and not to the property itself. This is legally, not to mention practically, unsupportable.
 

 It is elementary that, in Blackstone’s words, tenants by the entirety “are seized of their respective moieties, but both and each has the entirety. They are seised per tout, and not per my.”
 
 Green v. King,
 
 2 Wm. Blackstone 1211, 1214, 96 Eng.Rep. 713, 714 (C.P. 1777),
 
 quoted in King v. Greene,
 
 30 N.J. 395, 400, 153 A.2d 49, 52 (1959). Accordingly, when Charles Ward filed his petition on January 9, 1986, the automatic stay of 11 U.S.C. § 362(a) operated to stay any action that would affect property which he held as a tenant by the entirety. More specifically, there was a stay of “the enforcement, against the debt- or or against property of the estate, of a judgment obtained before the commencement of the case under this title.” 11 U.S.C. § 362(a)(2). The foreclosure sale conducted by the Camden County sheriff was just such a stayed action. Since the sale was conducted in violation of the stay, it was void and without effect.
 
 Kalb v. Feuerstein,
 
 308 U.S. 433, 438-40, 60 S.Ct. 343, 345-47, 84 L.Ed. 370 (1940). The district court did not err in so holding.
 

 III.
 

 Statutory Exception to Voidability of Sale
 

 As an alternative to its valid-sale argument, Bowest claims that it was a good-faith purchaser of the foreclosed property as defined by 11 U.S.C. § 549(c), and that the sale is therefore not voidable. Section 549(a) “permits the trustee to avoid transfers of property that occur after the commencement of the case.” S.Rep. No. 989, 95th Cong., 2d Sess. 90,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5876. Subsection (c) provides an exception for good faith purchasers who (1) are ignorant of the bankruptcy, (2) pay fair market value for the property, and (3) perfect their title under applicable law so as to defeat a subsequent bona fide purchaser before a notice or copy of the bankruptcy is filed with the appropriate authority.
 
 [4]
 

 Because it is not contested that Bowest was “without knowledge of the commencement of [Charles Ward’s] case” at the time of the sale, as required by the exception to avoidance, we must consider whether a bona fide purchaser after Bowest could have acquired an interest superior to that of Bowest. Subsection (c), which sets forth a substantive federal law standard limiting the trustee’s power of avoidance, utilizes various local legal rules for the perfection of title as reference points.
 

 Under New Jersey’s race-notice recording statute, a deed is perfected when it is recorded by a purchaser without notice of prior claims. N.J.Stat.Ann. § 46:22-1 (West 1940).
 
 [5]
 
 Relying on Bowest’s admitted failure to file its deed, the district court held that it did not fall within the exception
 
 *127
 
 for good faith purchaser under section 549(c). The court explained that “[u]nder the applicable law of New Jersey, ... a deed to real estate is void and of no effect against subsequent purchasers until duly recorded in the county in which the property is situated.”
 
 In re Ward, 74
 
 B.R. 465, 468 (D.N.J.1987) (citation omitted).
 

 Bowest argues that notwithstanding its failure to record the deed, which is the essential condition for perfection imposed by New Jersey, there could be no bona fide purchaser subsequent to Bowest because there was an uncancelled mortgage of record indicating that it had filed a lis pendens, giving a subsequent purchaser notice of its interest.
 
 [6]
 
 This issue has apparently not arisen before. We are guided in its resolution by the fact that subsection 549(a) states a general rule favoring the trustee’s power of avoidance, to which subsections (b) and (c) “create ... very narrow exceptions.” 4 L. King,
 
 Collier on Bankruptcy
 
 11549.02, at 549-6 (15th ed. 1987). It follows that as an exception, subsection (c) must be strictly construed.
 

 We do not read this section to require the bankruptcy court to make an ad hoc determination of the respective rights of the purchaser seeking to invoke the subsection (c) exception and other potential purchasers subsequent to it in light of peculiar circumstances present in each case. Instead, we believe that subsection (c) requires only an inquiry into whether the purchaser has taken the steps necessary under state law to perfect its claim against any hypothetical subsequent bona fide purchaser, who, by definition, would be one without notice of Bowest’s claim. This inquiry, which is an objective one, permits prompt determination of the trustee’s power of avoidance, which we believe accords with the statutory purpose of section 549. Bowest failed to record its deed and, therefore, has not met the requirements of perfection under section 549(c).
 

 Bowest also claims that subsection (c) applies notwithstanding its failure to perfect title because the subsection “clearly requires that a copy of the notice or petition be filed before inquiry is ever drawn to whether [Bowest’s] interest is perfected.” Brief of Appellant at 18;
 
 see In re Colev-ins,
 
 13 B.R. 645 (Bankr.N.D.Ga.1981) (upholding, without reference to perfection of title, post-petition transfer where no notice had been filed). If Bowest’s reading were correct, it would make superfluous the language of subsection (c) that requires that a purchaser not only be “without knowledge of the commencement of the case,” but also that it perfect its interest and give “present fair equivalent value” before it can trump the trustee’s power of avoidance. We are not persuaded to read the statutory language in a manner that renders much of it unnecessary. Bowest’s lack of notice of Charles Ward’s bankruptcy did not eliminate the requirement of perfection, but merely extended the time during which Bowest could have claimed ignorance of the bankruptcy.
 
 See In re Graham,
 
 35 B.R. 15 (Bankr.D.S.C.1983);
 
 In re Dennis,
 
 14 B.R. 125 (Bankr.E.D.Pa. 1981);
 
 In re Russell,
 
 8 B.R. 342 (Bankr.W. D.Pa.1980).
 

 It follows that the district court did not err in failing to accord Bowest the status of a good-faith purchaser.
 
 [7]
 

 IV.
 

 Vacation from Stay
 

 Bowest’s final argument is that the stay pursuant to Cynthia Ward’s bankruptcy should have been lifted pursuant to 11 U.S.C. § 362(d)(2) because Bowest proved that Cynthia Ward had no equity interest in the property and Cynthia Ward did not show that the foreclosed property was necessary for an effective reorganization. Bowest concedes that the standard of re
 
 *128
 
 view is whether the fact finding is clearly erroneous. Bowest produced only a tax collector’s assessment and an appraisal report as its proof of the fair market value of the premises. The bankruptcy court found this was insufficient to show that the debt- or lacked equity in the property.
 

 In the majority of the relevant cases, the creditors offered more than bare-bones, paper allegations to satisfy their burden
 
 un
 
 der section 362(g) of proving the debtor’s lack of equity in the property.
 
 See e.g., In re Toto,
 
 29 B.R. 947, 948 (Bankr.E.D.Pa.1983) (mortgagee presented testimony of appraiser regarding fair market value of property);
 
 In re Terra Mar Associates,
 
 3 B.R. 462, 465 (Bankr.D.Conn.1980) (lack of equity supported by creditor’s witness and written reports of three court-appointed disinterested appraisers);
 
 see also In re Air Vermont, Inc.,
 
 43 B.R. 244, 246 (Bankr.D.Vt.1984) (creditor submitted official appraisal and additional affidavits to prove lack of equity).
 

 The moving party bears the burden of proof on a motion for relief from the stay.
 
 See
 
 11 U.S.C. § 362(g). The Bankruptcy Court’s finding was not “clearly erroneous”.
 
 See In re Butler,
 
 425 F.2d 47, 50 (3d Cir.1970). Accordingly, the district court did not err in affirming the denial of the motion to vacate the stay.
 
 [8]
 

 V.
 

 For the foregoing reasons, the judgment of the district court, upholding the decision of the Bankruptcy Court, will be affirmed.
 

 [1]
 

 . Bowest’s claim that its purchase of the land on that day was without knowledge of the pending bankruptcy petition of Charles Ward is not disputed. A notice of the automatic stay was issued by the bankruptcy court to Bowest on the day of the sale.
 

 [2]
 

 . On February 28, 1986, the trustee for Charles Ward filed a notice of abandonment of the foreclosed property, which became effective on March 26, 1986. The abandonment is irrelevant to the issues before us because the automatic stay in Charles Ward’s bankruptcy preceded it.
 

 [3]
 

 . For this reason, it is irrelevant that the district court may have erred in concluding that the marital property was part of the estate by virtue of 11 U.S.C. § 541(a)(2) (1982 & Supp. IV 1986) (debtor’s estate also includes ”[a]ll interests of the debtor and the debtor’s spouse in community properly”). "[C]ommunity property” may well be a term of art, used by Congress in 11 U.S.C. § 541(a)(2) to refer to marital property in community property jurisdictions.
 
 See In re Fisher,
 
 67 B.R. 666, 668 (Bankr.D.Colo.1986);
 
 see also
 
 4 L. King,
 
 Collier on Bankruptcy,
 
 ¶ 541.15 (15th ed. 1987). We have discovered no case where section 541(a)(2) was applied in a non-community property jurisdiction, such as New Jersey. In any event, as noted in the text, the issue is not whether the entire property was in the estate, but whether the sale was void because of the automatic stay.
 

 [4]
 

 . 11 U.S.C. § 549(c) reads, in full:
 

 The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.
 

 [5]
 

 . N.J.Stat.Ann. § 46:22-1 states:
 

 Every deed or instrument of the nature or description set forth in section 46:16-1 of this title shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against subsequent judgment creditors without notice, and against all subsequent bona fide purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been first duly recorded or registered; but any such deed or instrument shall be valid and operative, although not recorded, except as
 
 *127
 
 against such subsequent judgment creditors, purchasers and mortgagees.
 

 [6]
 

 . Even were we inclined to require an ad hoc examination, which we reject in the text, it is unlikely that a filed lis pendens would give the requisite notice of a foreclosure sale.
 

 [7]
 

 . In light of our holding that Bowest failed to properly perfect its deed, we need not examine the lower court’s Ending that Bowest did not pay present fair equivalent value for the foreclosed property, since a good-faith purchaser must satisfy all aspects of 11 U.S.C. § 549(c).
 

 [8]
 

 . In its Reply Brief, appellant argues that this court’s recent decision in
 
 In re Roach,
 
 824 F.2d 1370 (3d Cir.1987) requires us to reverse the district court’s decision in this case. In
 
 Roach,
 
 we held that, by enacting the Bankruptcy Code, Congress did not intend to extinguish or suspend creditors’ foreclosure rights under state laws.
 
 See id.
 
 at 1377-78.
 

 The issue in
 
 Roach
 
 involved the propriety of including in a confirmation plan a provision to cure a mortgage default where a foreclosure judgment had been obtained before the debtors filed a petition under Chapter 13. We do not have before us the issue of the propriety of the plan, and therefore do not decide whether Cynthia Ward may properly seek to cure the default or is limited to a right of redemption, which, under New Jersey law, may be exercised by filing a motion objecting to the sale within ten days of the sale.
 
 See Hardyston National Bank
 
 v.
 
 Tartamella,
 
 56 N.J. 508, 267 A.2d 495 (1970); N.J. Rule of Court 4:65-5.
 
 See generally In re Brown,
 
 73 B.R. 306 (Bankr.D.N.J.1987).