In re Richard K. LOKEN and Shelly R. Fox–Loken, Debtors.

Fred LONG, Trustee, Plaintiff,

v.

JOE ROMANIA CHEVROLET, INC., Defendant.

Bankruptcy No. 691–65371–H13.
Adv. No. 693–6038–H.

United States Bankruptcy Court,
D. Oregon.

July 9, 1993.

---

Eric R.T. Roost, Eugene, OR, for plaintiff.

Ronald Walro, Eugene, OR, for defendant.

1. Unless otherwise indicated, all statutory references hereinafter are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

11 U.S.C. § 547(c)(3) states:
(c) The trustee may not avoid under this section a transfer

\*    \*    \*    \*    \*    \*

(3) that creates a security interest in property acquired by the debtor
(A) to the extent such security interest secures new value that was
(i) given at or after the signing of a security agreement that contains a description of such property as collateral;
(ii) given by or on behalf of the secured party under such agreement;
(iii) given to enable the debtor to acquire such property; and
(iv) in fact used by the debtor to acquire such property; and

## MEMORANDUM OPINION

POLLY S. HIGDON, Bankruptcy Judge.

In this adversary proceeding the trustee seeks to avoid as a preferential transfer the defendant's security interest in the debtors' motor vehicle.

The parties stipulated to the facts. The debtors filed their Chapter 13 petition on December 10, 1991. On October 19, 1991, within the 90 day preference period, debtor, Shelley Fox–Loken, purchased a car from the defendant, signing a promissory note, granting it a purchase money security interest in, and taking possession of, the vehicle. The defendant's application for notation of its security interest on the vehicle's title was not received by the Oregon Motor Vehicles Division until 12 days after the debtor took possession. The 10th and 11th days were not weekends or holidays.

The trustee alleges that defendant's security interest in the vehicle is an avoidable preferential transfer not subject to the exception contained in 11 U.S.C. § 547(c)(3)(B) [1] because perfection occurred more than 10 days after the debtor took possession of the vehicle.

Although the parties have presented only the § 547(c)(3)(B) issue to the court, the court believes a prior inquiry must be made. That inquiry is whether there was a transfer, within the meaning of § 547(e)(1)(B), for or on account of an antecedent debt.[2] If there were no such trans-

(B) that is perfected on or before 10 days after the debtor receives possession of such property;
(emphasis added).

2. 11 U.S.C. § 547(b) provides:
(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if

fer there is, by definition, no avoidable preference and one does not reach any § 547(c) issues. The answer to this court's inquiry requires an analysis of the interplay between state and federal bankruptcy law.

"Transfer" is defined broadly in § 101(54) to include the act of granting a security interest. For purposes of § 547, § 547(e)(2) states when a transfer is made. Under that statute, to determine when a transfer is made one must determine when a transfer is perfected.[3] Section 547(e)(1) describes when a transfer is perfected. Section 547(e)(1)(B) states:

> (B) a transfer of a fixture or property other than real property **is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.**

(emphasis added). Under § 547(e)(1)(B), the court must look to state law to determine precisely when a contract creditor cannot acquire a judicial lien superior to the transferee's interest. *In re Hesser,* 984 F.2d 345, 348 (10th Cir.1993); *see also In re Busenlehner,* 918 F.2d 928, 930 (11th Cir. 1990), *reh'g den.,* 924 F.2d 1067, *cert. den.,* — U.S. —, 111 S.Ct. 2251, 114 L.Ed.2d 492 (1991). After the date of perfection is determined, the time of transfer must be ascertained and must fit within the ten day grace period provided in § 547(e)(2). *Hesser,* 984 F.2d at 348.

■ Under Oregon law, the exclusive means for perfecting a security interest in a motor vehicle, other than one held in inventory, is by filing an application for notation of the security interest on the vehicle's certificate of title pursuant to O.R.S. 803.097(1).[4] O.R.S. 803.097(3) provides that the security interest is perfected *as of* the date marked by the division on the application. However, O.R.S. 803.100 provides that "rights and remedies of all persons in vehicles subject to security interests established under ORS 803.097 shall be determined by the provisions of the Uniform Commercial Code." The Uniform Commercial Code as adopted in O.R.S. 79.-3010(2) provides in relevant part:

> If the secured party files with respect to a purchase money security interest before or within *20 days* after **the debtor receives possession of the collateral,** the secured party takes priority over the rights of a ... lien creditor which arise between the time the security interest attaches and the time of filing.

O.R.S. 79.3010(2) (emphasis added). This type of priority provision is commonly known as a "relation-back" provision. Such provision, if applicable, is interpreted by the courts to effectively deem a security interest perfected on the date, in the words of this statute, "the security interest attaches". *See* 2 J. White & R. Summers, *Uniform Commercial Code* § 25–3 at 420 (3d Ed.1988); *In re Duncombe,* 143 B.R. 243, 246 (Bankr.C.D.Cal.1992); *In re Walker,* 67 B.R. 811, 814 n. 6 (Bankr.C.D.Cal. 1986), *aff'd,* 861 F.2d 597 (9th Cir.1988). If the language of O.R.S. 79.3010(2), as incorporated by O.R.S. 803.097, is so interpreted, on its face Oregon law appears to provide two, conflicting, dates for the perfection of security interests in vehicles. A closer examination reveals that they are

---

(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
(emphasis added).

3. 11 U.S.C. § 547(e)(2) states:
(e)(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made
(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or
(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of
(i) the commencement of the case; or
(ii) 10 days after such transfer takes effect between the transferor and the transferee.

4. O.R.S. 79.3020(3)(b) directs that the Oregon Vehicle Code, O.R.S. Chapters 801 through 822, generally governs perfection of security interests in motor vehicles.

not contradictory. They may be interpreted so as to give meaning to each. *See Federal Power Com'n v. Panhandle Eastern Pipe Line Co.,* 337 U.S. 498, 514, 69 S.Ct. 1251, 1260, 93 L.Ed. 1499 (1949) (whenever possible, all sections of relevant applicable statutes must be reconciled so as to produce a symmetrical whole). O.R.S. 79.3010(2) applies only to the priorities between purchase money security interest holders and lien creditors. Its purpose is to protect the purchase money security interest holder who reasonably perfects its interest from the rights of lien creditors which may arise between the date of attachment and perfection. O.R.S. 803.097, on the other hand indicates, for general purposes, the date a security interest in a vehicle is perfected. Application of the priorities established between purchase money security interest holders and lien creditors in O.R.S. 79.3010(2) may result in a "deemed" perfection for the "p.m.s.i. holder" from the date of attachment of its interest. This "deemed" perfection date, however, applies only as to the parties stated. Non-purchase money security interest holders' interests will be perfected when the application is received and marked by the state.

Upon first blush one is tempted to say that O.R.S. 79.3010(2) is not relevant to the analysis required for purposes of determining whether there is an avoidable preference because its literal language does not specify the perfection date for security interests in vehicles. That statute merely provides a grace period which affects the priorities between the lender and an intervening lien creditor. However, the language of this statute is forced into the preferential transfer analysis by Code provision § 547(e)(1)(B) itself, which defines the perfection of a transfer as that point in time when the interests of a lien creditor

cannot become superior to that of the security interest holder.

■ Because the defendant filed its application with the state within 20 days after the debtor received possession of her vehicle and as it holds a purchase money security interest in the vehicle, the language of § 547(e)(1)(B) and O.R.S. 79.3010(2) dictates that its interest was perfected under Oregon law as of the date its security interest attached. As, under Oregon law, the attachment and perfection are deemed to have occurred simultaneously the language of § 547(e)(2)(A) applies. Under that subsection the transfer of the security interest attacked by the trustee as preferential is deemed made at the time it took effect between the transferor and transferee. Under our facts this took place on October 19, 1991. The transfer of the security interest was not a transfer "for or on account of an antecedent debt" because the debt between the parties also arose on October 19, 1991.[5]

Three appeals courts have addressed the appropriate timing and method of the perfection of a purchase money security interest provided for in § 547. In *In re Hamilton,* 892 F.2d 1230 (5th Cir.1990), the Fifth Circuit held that the ten day requirement of the § 547(c)(3)(B) affirmative defense prevailed over a similar Texas 20 day "reach-back" period for purchase money security interests.[6] The court, without analysis, ruled that under the supremacy clause federal bankruptcy law prevailed over state law.

In *In re Busenlehner,* 918 F.2d 928 (11th Cir.1990), the Eleventh Circuit, addressing the identical issue with similar Georgia law before it, held that because the Bankruptcy Code adopts state law under § 547(e)(1)(B) the date of perfection for preference actions is the date the security documents

---

5. The court notes that under these facts and O.R.S. 79.3010(2) the language of § 547(c)(3)(B) would also protect the defendant. If the defendant had not held a purchase money security interest the provisions of O.R.S. 79.3010(2) would not apply. Therefore any perfection of its security interest would necessarily have occurred after the debt arose between the parties. Under these circumstances a § 547(b)(2) issue

would not arise. The case would be decided under § 547(c)(3).

6. In *Hamilton* it was unclear under the facts stated whether the creditor's security interest attached when the loan was made. The court was not asked to address whether there was an antecedent debt under § 547(b).

were executed. Each court stated that legislative history supported its position.

In 1993 the Tenth Circuit Court of Appeals took up the issue. In *In re Hesser*, 984 F.2d 345 (10th Cir.1993), the court had before it timing issues under both §§ 547(b)(2) and 547(e). It followed *Busenlehner*, agreeing that the Code adopts state law to determine the date of perfection of a security interest.[7]

The most thorough analysis, both of the legislative history and language of § 547(e)(1)(B), appears in *In re Burnette*, 14 B.R. 795 (Bankr.E.D.Tenn.1981). There Judge Kelley reaches two conclusions. First, Congress intended the ten day "grace period" for perfection provided in § 547(e)(2)(A) and § 547(c)(3)(B) to provide uniformity. It did not intend for state grace periods to be relevant under the statute. Second, the language of § 547(e)((1)(B) cannot reasonably be interpreted to accomplish that intent. This court agrees with both of these conclusions. Accordingly, the trustee may take nothing; the court will dismiss the case.

This memorandum opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 9014, which incorporates Rule 7052, they will not be separately stated.

## ORDER DISMISSING COMPLAINT

This matter having come before the court upon the stipulated facts of the parties, the court having entered its memorandum opinion on July 9, 1993 and based thereon;

**IT IS HEREBY ORDERED** that the plaintiff is not entitled to relief under 11 U.S.C. § 547 and shall take nothing by the complaint herein; and

**IT IS FURTHER ORDERED** that this adversary proceeding is dismissed.

---

**7.** In footnote 3, it attempts, unsuccessfully and disingenuously, to distinguish *Hamilton*.